The Court calls Appeal 24-3104, Soloway v. ALM Global and Guzman. We're going to begin with oral argument. Is Mr. Beazell on behalf of the appellant? Mr. Beizell, hold that against you. Thank you. Good morning. May it please the Court, my name is Patrick Beizell and I represent the appellant, Mr. Soloway. When a private individual pleads that a publication defamed him by accusing him of lacking ability in his profession and in his trade, what are the limits of Illinois' Innocent Construction Rule? That's the central issue today. The Innocent Construction Rule, as we know, can convert a statement that is defamatory per se into one that is not. But if and only if that innocent construction is reasonable, and that's the problem, that's where the District Court erred. The District Court granted ALM's motion to dismiss based on its application of the Innocent Construction Rule, but the District Court got it wrong. ALM's defamatory publications are incapable of a reasonable innocent construction. There are two points that I want to make today in furtherance of that concept. First, this case can be reversed and remanded for the simple reason that ALM's publications, even when read in their entirety, constitute defamation per se and there is no reasonable innocent construction that can save them. And two, the per quote claim. The per quote claim was viable. Mr. Soloway didn't need to replete it. The District Court wrongly applied Illinois law and it shouldn't have been dismissed. Now in 1982, there was a problem. Illinois courts were in disarray. The Supreme Court of Illinois stepped in in Chapsky because previously, for decades, Illinois courts across the state had been straining to find unnatural, but possibly innocent meanings of words where such a construction was clearly unreasonable and importantly, a defamatory meaning was far more probable. That's the case here. Now we can examine the entire publication as I suggested. The only reasonable construction here is the one that we've offered. Mr. Soloway was fired from Cushman for his mishandling of Cushman's involvement in a Trump probe. That's the reasonable reading. That's what the reasonable reader understood. That's what ALM intended. The counsel, is that the only reasonable reading? I mean, when a senior executive like this is let go or there's a change in that level of leadership, you have an entire board that's addressing that situation. So why couldn't a reader come across this article and say, well, I don't know what happened here. I don't know what Mr. Soloway did or didn't do or knew or didn't know about the lawyers behind him or if the court even got it right because courts make mistakes sometimes and here it was expunged. But what I do know is that the board came to a conclusion that they wanted a different lawyer. No, Your Honor. I think that that would be an unreasonable interpretation and I'll explain why. I think primarily here, the rub is the phrase in the wake of. The parties have gone to great lengths to explain this. Remember, we need to use the natural and obvious language. In the wake of is a journalistic turn of phrase. It's commonly used in this type of publication, which is a trade journal. In the wake of establishes a causal connection between two events, the triggering event and the thing that proceeds or succeeds rather in the wake of that event. Why is that? I don't see how that follows logically. There's a fallacy post hoc ergo proctor hoc. It happens afterwards. Therefore, the fallacy would be that it was the cause of. Correct. I'm not suggesting that this is a correlation and now I'm arguing causation. I'm just looking at the words themselves. In the wake of. If I step out into a lake eight months after a boat has passed, there's no wake. The time has passed. It cannot simply mean after in some generic temporal sense, as ALM and the district court suggest. It is a matter of consequence. It follows because of. And the district court, I'll point out, knew this. The district court defined in the wake of in its opinion as in the aftermath of, as a consequence of, or following directly on. And then the district court decided not to use those definitions. Instead, the district court simply said after. But that's not what in the wake of means. And that's not what was intended. What was intended here was to juxtapose the replacement of a high profile GC with a rebuke in a Trump probe. This was sensationalism and click bait, pure and simple. And the reason why they wanted to juxtapose those two things together with the phrase in the wake of was to make an insinuation, a connection, a causal link between his departure and a Trump probe and to suggest that he was terminated. Following up on that is, is there any cases from our court or from Illinois courts that provide for an isolated reading of paywall information versus non paywalled information? No, Your Honor. This is a novel issue as we briefed. I checked this morning. Nothing new has come to light. However, what I'll say is that this court has at times broached the issue but decided not to take it up. So for example, in Juan v. Denton, the argument there was read the headline in isolation, ignore the rest of the context. This court said, I'm not going to do that because the context is right there. It's not hidden behind a paywall. It's immediately accessible. This is a very different situation and one that no court in Illinois has squarely faced and this court hasn't either. But the paywall issue isn't necessary to resolve this case. This case can be reversed and remanded when we consider the entire article. The entire article is defamatory per se. The context of the article that was locked behind the paywall is supposed to give, under Illinois law, the kind of salutary context that clarifies a potentially defamatory headline, that makes it clear what the headline really meant. But here it does nothing of the sort. In fact, it emphasizes and furthers the intended reading of the reasonable reader that Mr. Soloway was fired for his mishandling of Cushman's involvement in the Trump probe. And in terms of the reasonable reader, we have evidence of what reasonable readers believe in light of this article. And ALM has proffered no examples. Take for example Cushman itself. Cushman itself called ALM repeatedly after the April article was published and told them it was false. And then when ALM went directly to Cushman and asked them to comment, the response was, your story, and I'm quoting, suggesting a direct link between his departure and the contempt order is not accurate or factual. That's page 23 of the appellate record. So we know that a reasonable reader would construe this headline and the rest of the article the way that ALM intended. In a false way. In a way that ruined Mr. Soloway's life. And I want to be really clear about that. Because there's been zero contention by ALM that he was in fact damaged in this way. He hasn't been able to get a job. He lost $2 million in salary. His entire professional reputation. 30 years. Actually, let me pick up on that. He lost $2 million in salary. Well, he voluntarily left Cushman, correct? Certainly. He lost $2 million worth of earning power. There's ample reason to believe that he would have gotten the same or better salary at another position given his impeccable record and over 30 years of experience. There's no reason to think that he couldn't obtain $2 million again. But instead, following this article which has haunted him and refused to even get him in the door for an interview, he's been unable to get any jobs. And with that, I'll save the rest of my time for rebuttal. Very good. Thank you, Mr. Baisal. We'll now move to argument on behalf of the appellee, Mr. Browning. Good morning, Your Honors. May it please the Court. I'm John Browning of Davis Rights Remain, and I'm here on behalf of Respondents ALM Global LLC, the publisher of the New York Law Journal, the Corporate Council, and its reporter, Hugo Guzman. The District Court correctly dismissed the two claims that are on appeal here. First, the defamation per se claim, which Mr. Soloway actually pleaded in his complaint, which fails under the Illinois Innocent Construction Rule, and the defamation per quad claim, which Mr. Soloway does not specifically plead in his complaint and declined to specifically plead when he had a chance to amend, which fails for that reason and the lack of special damages. Those decisions should be affirmed. On the standard for the Illinois Innocent Construction claim, I'd like to clarify a point Mr. Soloway's attorney made a moment ago. He suggested that what innocent construction means is that if a statement is capable of a non-defamatory reading and that interpretation is reasonable, that's the end of the conversation. It is not defamatory per se. Mr. Soloway referenced a slightly different standard, which might be that if one interpretation is far more reasonable than the other, there might be an issue that precludes dismissal, but that is not actually the standard and is a misstatement. The Illinois law is very clear that if the two interpretations, one defamatory, one non-defamatory, are both reasonable, the non-defamatory interpretation controls and court must dismiss. I just want to be clear on that point. So what is the non-defamatory interpretation here? Judge Kohler, I think you said it better than I could myself. The non-defamatory interpretation is that Mr. Soloway was the general counsel of Cushman at the time the company weathered a high-profile litigation involving its compliance with subpoenas in the Trump litigation and then at some point after that litigation was resolved, he left the company. And here I think I'd like to stress attention to Mr. Soloway's argument. He tried to emphasize that he's looking at the article holistically, as he must under Illinois law, the Innocent Construction Rule is dependent on looking at articles in their entire context. As I'll go into later, the right approach here is to look at everything. But really he also fixated on the headline and specifically three words in the headline, in the wake of, and that's not consistent with the Innocent Construction Rule, which requires a more holistic approach and requires the court to look at the entire article. And on that point, I would like to stress some features of the article when it's looked at as a whole. Let's start with the headline and work our way down. The headline is, Cushman G.C. Replaced in Wake of Company's Rebuke in Trump Probe. On page 53 of his brief, Mr. Soloway concedes that it's not defamatory to say that he was replaced. Rather, he stresses in alternative reading that the headline in the article implies that he was replaced because of his mishandling of the subpoena proceedings. But that's not what the article actually says. The article simply says that he was replaced in the wake of the company's probe. And as your honors have indicated already, that is capable of a clear, reasonable, natural, non-defamatory meaning, as in he left the company after the probe and not because of it. To what extent could a publication describe parties subpoenaed in a case without losing the protection of the fair report privilege? You know, I was thinking about this, or the innocent construction privilege. You said the fair report privilege. Well, let's start with innocent construction, and then let's also talk about fair report. So I think in innocent construction here, I think it's important to distinguish this case and these facts from a line of cases that Mr. Soloway relies on heavily, including Tweet. I'm going to call those the sort of gratuitous innuendo cases. And in those cases, the context is very different. In Tweet, it was a mafia tell-all written by an admitted mobster about a lawyer taking a million dollars and a sack of money to essentially settle a case. And there the court said it was unnatural to read, this is a normal retainer and thus non-defamatory. Soleil is another good example. Soleil was a case where there was reporting about an antitrust civil action, and it was a civil action, and it included gratuitous detail, which is that under the Sherman Act, these acts could also be considered criminal. Actually, I think this crystallizes the answer to your question, Your Honor. A publication might be defamatory if it includes that kind of gratuitous detail, but that kind of gratuitous detail is not present here. Nowhere does the article state that Mr. Soloway's job performance was poor. To the contrary, it includes a quote from Cushman defending his handling of the matter, and the article makes clear that Cushman was ultimately vindicated. If you read the whole article, it says multiple times that the contempt order was overturned, the penalties were wiped out, they were given more time to respond. But just to make a hypothetical counterfactual, it might be different if the article included a gratuitous line along the lines of, normally in typical business, when a general counsel leaves a large corporation amicably, there is a statement about why he left. If you included that in conjunction with a statement saying Cushman did not explain his exit, perhaps there could be a defamatory innuendo, and that might be the limit of the innocent construction rule. But that is assuredly not what has happened here. What's happened here is, Your Honor, there's simply a gap. The facts which are accurately related are Mr. Soloway left Cushman, was replaced by a new GC, and his former employee didn't explain why, which leaves a gap to raising questions about why, but the article does not improperly inject or suggest or implicate an answer to that question, and I think that helps explain the limits of the innocent construction rule and why it applies here. I'd be happy to move on to fair report if you'd like. Please. So I think with respect to Mr. Soloway and the district court, there's been a bit of a misunderstanding about what respondents argued below here. This is an alternate argument, so this is assuming Your Honors disagree with me, that my interpretation, the non-defamatory interpretation, is reasonable, and so the innocent construction rule doesn't apply. In the alternative, respondents do not, as the district court suggested, argue that everything, every word of the article is simultaneously substantially true, a fair report, and opinion. And I will get to fair report in a minute, but I think it's important to stress this point. Rather, what we've argued and what we argue now is that those defenses apply to different parts of the article and those parts combine to make a complete defense. So moving to fair report to actually address this specific question, part of the article is a fair abridgment of the Cushman contempt proceedings. It notes that, just to summarize the summary, it notes that there was a contempt holding, but it also discloses clearly multiple times, both in front of the paywall and behind it, that the contempt order was overturned by another court and that the damages were wiped out. I'm just going to backtrack in a second before Mr. Soloway attacks me in reply. The in front of and outside the paywall point, I think this is important. The record on, I think it's appendix 43, shows a screenshot of what the second version of the article looks like to non-subscribers. And there are three bullet points under the what you know section. And the last bullet point contains a very pithy one-sentence summary of what happens. Cushman was held in contempt. A later court overturned that holding. And so just to sort of preempt this argument, from our position, it makes no difference whether you're looking at the paywall or not. As a matter of fact, looking behind the paywall or not, as a matter of fact, it's legally irrelevant. Aware of any Illinois or Seventh Circuit cases on this distinction? I am not, Your Honor. The parties have both cited a lot of Illinois and Seventh Circuit cases on the innocent construction rule in particular that emphasize reading articles and publications in their total context. The cases that hold otherwise are from courts or jurisdictions that don't recognize this rather unique rule and so are irrelevant here. The cases are also factually irrelevant. So if you take Solano, which is the Ninth Circuit case where the front page of a magazine indicated that a Baywatch star posed nude in one of the back pages. But if you went to the back pages, you would see that wasn't true. He was wearing his shorts. That case is very different from the case we have here. As I've said, Your Honor, here it makes no difference substantively whether you're looking in front of the paywall or behind the paywall. The gist of the article is the same on both sides. At least the non-defamatory interpretation can be reasonably drawn on both sides. So this really isn't a good case to get into whether there should be a distinction based on paywalls, even if the court wanted to take it up. And again, under actual Illinois and Seventh Circuit case law, there's a stress on reading things in context. So I mentioned the Tweet case before, which Mr. Solano relies on heavily. There the court read the entire book written by this mobster, and it held that based on this context, this book is all about corruption. And so if you say a mob boss gave a lawyer a million dollars in cash skimmed from a casino, you're going to assume that it's for a corrupt purpose, even if the article doesn't say so. And that really stresses the importance of reading everything. And here – I was thinking about this on the way over – and Mr. Solano's insistence, or he's walked back on this in his argument a second ago, but in his briefs his insistence that articles should be split so that the bit in front of the paywall and behind the paywall actually might work to disservice libel plaintiffs in future. Because this is a case where essentially Mr. Solano is arguing respondents reported two independently non-defamatory facts, but in combination those non-defamatory facts can be read together to create a defamatory implication. If Mr. Solano is correct and the paywall is a block between those two facts and they must be read separately, it could create a situation where libel plaintiffs are in trouble. So imagine if in this case the headline in front of the paywall simply said, Cushman replaces Soloway as GC. And then after that, after the paywall, it then had a report that didn't include that detail, but slated Cushman for its handling of the contempt proceedings, there would be no action. You'd have to read the two separately. The better rule is the rule that Illinois and the Seventh Circuit has recognized in the innocent construction context, in the historical context of newspapers where a headline might appear in an article and you'd have to buy it to read to the back, where the whole thing needs to be read together. And if the whole thing needs to be read together, Your Honors, respondents are confident that this article is capable of a reasonable non-defamatory interpretation. And that requires dismissal of the per se claim. Moving to per quad briefly, I think there's two very important points to note here. The first one is Mr. Soloway's defamation per quad claims now are inconsistent with his actual pleadings. We allow lawyers to argue in the alternative though. I'm happy to allow lawyers to argue in the alternative. I do it myself. But I think there's an important point here that I still need to stress. The complaint doesn't mention the words per quad, which may be not fatal, but the thrust of the complaint and the thrust of Mr. Soloway's argument here is that the article is defamatory on its face. It's defamatory on its face because the implications that can be drawn from it fall into the per se categories for fitness and business. Now defamation per quad comes in two flavors, but both are antithetical to these pleadings. So one kind of defamation per quad is when an article is not defamatory on its face, but you need to read in extrinsic facts. So an example of that, Mr. Soloway provided a helpful one. A newspaper reports a man burned down his barn. If people who knew him understood that he had an insurance policy on that barn and that wasn't reported, that would be defamation per quad. So you read the extrinsic fact in the reported one to get the defamatory implication. The other flavor is something that's defamatory on its face, but doesn't fall into one of the categories. We have neither here on the pleadings. Mr. Soloway is adamant that the article, particularly the words in the wake of, necessarily imply that he was fired because of his handling of these proceedings. And that means that he has failed to plead either of the categories of per quad. And on this, I'd also like to note he had a chance when the court dismissed his per se claim to re-plead, but the court specifically allowed him to amend to make these claims better or, as Your Honor said, to take an alternative tack and change course. He didn't. He doubled down. He's pleading per se, which fails under the Unicef instruction. Finally, on per quad, there's no dispute here. The per quad requires special damages. Special damages are realized, actualized, out-of-pocket losses. So if the article came out and Mr. Soloway lost a job that he had because of it, maybe that would be per quad. But that's not what he's arguing here. Here his attorney referenced his earning power. His earning power is speculative. The fact whether or not he could get another job paying $2 million a year, which sounds really nice, is conjecture, but is not special damages. And finally, Your Honors, I think we actually omitted this case by mistake. Mr. Soloway says he lost interest from recruiters because of the article. That's not special damages. The Kapotesis case we quote, but I don't think we pull out this exact quote, makes that point. It's not special damages as a matter of law. It's all he's pled for special damages, and the per quad claim must be dismissed or the dismissal must be affirmed. Unless Your Honors have any other questions, I'll rest on my papers. Thank you, Mr. Browning. Mr. Beisel, we'll now move to you for rebuttal argument. Thank you, Your Honor. I have four points in rebuttal. I'd like to pick up where we just left off with per quad. So there's a couple of points that need to be clarified here. The rule as articulated by opposing counsel is not quite right. So it's true that there are two flavors of per quad. One, the classic one where you need extrinsic evidence to establish the defamation, because defamation per quad quite literally translates to with explanation. The second flavor, though, is not quite right. So the second type of per quad is where you don't need extrinsic evidence, because the statement is facially defamatory. How does that differ from per se? It differs from per se in the sense that the defamation per se statement at issue is deemed cured by the innocent construction rule. But the innocent construction rule doesn't apply to per quad. So if it's saved by the innocent construction rule, you still have per quad as a backstop for facially derogatory remarks that impugn someone's profession. That's exactly what happened here. It's facially defamatory. The only reason why we get past per se at the district court level is because of the wrong application of innocent construction. So if we assume that it is innocently construed here, then we have a facially defamatory statement. It cannot be cured anymore by the innocent construction rule, and per quad applies. So here, extrinsic evidence wasn't required. And even if it was, I contend that we had sufficient extrinsic evidence demonstrating that this was, in fact, defamatory, and that people understood it to be defamatory. And as to special damages. . . So why didn't you replead then? Why didn't we replead? Yeah, why didn't you replead? Candidly, Your Honor, we didn't think that it was necessary. We pled sufficient extrinsic evidence in the complaint itself, and under the law we don't need to plead extrinsic evidence. The only thing that we need to plead are special damages. And here the special damages are just the $2 million. We're not saying that the inability to get a job is the damage. It's the $2 million. And the $2 million. . . But how do you link that under Illinois law? I'm forgetting the name of the case, but it's the case where the person had a really great. . . It was the lead candidate on Wednesday, and there was a defamatory statement on Thursday, and then the company said, you're out. And that, I think the Illinois Supreme Court said, was not enough for special damages. So explain to me why you think your situation is different and what law you have to support that.  So I would point to imperial peril. In that case, the Illinois court explained quite succinctly that you only need to put the other party on notice of the damages that you're claiming, which here are pecuniary, as the law requires, the $2 million. And importantly, the plaintiff. . . But what about a headhunter case? Because we're downstream right from an actual, even a job offer. Is there any case law supporting special damages when a headhunter lost interest in the candidate? I'm not aware of a specific case with a headhunter losing interest, but I don't think that that is the case here. Yes, there are two executive recruiters who refused to associate with Mr. Soloway after the publications, and there was a job offer nearly on the table that was taken away because of the article. Those are the three examples that we did plead. So it's a little bit more than that. But again, we're not. . . But this is the Zoom. There wasn't an offer there in that situation, was there? There was not an explicit offer, no. There was intimation that he was a great candidate, that he would be fast-tracked, that he would get the job promptly following that interview, step into the interview. It's going wonderfully. She asks about online presence. As we've articulated, Mr. Soloway has none. The only online presence that he has are these defamatory publications. So she goes online, and then he hears back three weeks later with an automatic rejection. The reason there has to be and can only be that it's because of these publications. I want to make sure that I get to a couple other points since I'm low on time. So the notion that these two reasonable interpretations can't be balanced together. Sure, if they're both reasonable. The Illinois Supreme Court has been very clear that there is no balancing if they're on the same footing. But they're not on the same footing here. The innocent construction that was applied was not reasonable, and the defamatory one is more probable. And that's the rule from Chapsky. And I would point out that even this court recently in giant screen pointed to that same example and used a more reasonable standard. So if the defamatory statement is more reasonable, then the defamatory one wins out. So courts in Illinois in this court do, in fact, balance interpretations. Balancing is accepted. It's only when they're on equal footing that the innocent one wins out. As to the defenses, I just want to make clear that is not before this court. That was not a basis for the motion to dismiss. So we do not need to cover substantial truth, fair reporting privilege, or opinion. The only defense that's before this court is the affirmative defense, meaning it's their burden to prove the innocent construction rule. And as to those defenses, I want to point out the irony of opposing counsel discussing how the defenses work when you split up the article. You split it into pieces, and one defense goes here, and one defense goes there, rather than reading it as a whole. And we were taken to task for the exact same thing with the paywall, where we are asking the court to read the headline in isolation, the body separately. So it cannot be both. And as to the paywall, my final point, I will just say that I don't think that if this court or if Illinois courts had a paywall-type rule that it would negatively affect libel plaintiffs. I think that it would be an egregious loophole for publishers who could simply put the most sensationalized headlines that they wanted with impunity and then put curative information behind the paywall. Patrick Beissel's a murderer. Just kidding. Thank you, Mr. Beissel. Thank you, Mr. Browning. The case will be taken under advisement.